2024 IL App (1st) 240786-U

FIFTH DIVISION
July 12, 2024

No. 1-24-0786B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24110211501 |
| | ) | |
| JEROME ASHFORD, | ) | Honorable |
| | ) | Susana Ortiz, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**O R D E R**

¶ 1     *Held*: The circuit court's grant of the State's petition to detain defendant pretrial is affirmed because the court's findings were not an abuse of discretion.

¶ 2     Defendant Jerome Ashford appeals from the circuit court's order detaining him before trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Mr. Ashford argues that the court erred in determining that no condition or combination of conditions would reasonably ensure

his appearance at later hearings or prevent him from being charged with a subsequent offense. For the reasons that follow, we affirm the court's order of detention.

¶ 3                                    I. BACKGROUND

¶ 4    On March 29, 2024, Mr. Ashford was charged by the State as an armed habitual criminal (720 ILCS 5/24-1.7 (West 2022)), a Class X felony; he was also charged with aggravated assault with a deadly weapon (720 ILCS 5/12-2(c)(1) (West 2022)) and possession of between 30 and 100 grams of cannabis (720 ILCS 550/4(c) (West 2022)). Being an armed habitual criminal is a detainable offense. 725 ILCS 5/110-6.1(a)(6)(D) (West 2022). According to the State, these charges stem from an incident on March 29, 2024, in which Mr. Ashford pointed a loaded firearm at an individual on a Chicago Transit Authority (CTA) bus. Mr. Ashford was arrested on March 29, and has been in custody since.

¶ 5    On March 30, 2024, the State petitioned for Mr. Ashford to be detained until trial pursuant to section 110-6.1 of the Code (*id.* § 110-6.1). A hearing on the State's petition was held the same day. Mr. Ashford was present at the hearing and represented by counsel.

¶ 6    The State argued that Mr. Ashford "pose[d] a real and present threat to the safety of any person or persons in the community based on the specific articulable facts of the case" and that "no condition or combination of conditions c[ould] mitigate that risk." Consistent with the written proffer included in its petition, the State represented at the hearing that at approximately 6:12 p.m. on March 29, 2024, police officers "were dispatched to a call of a person with a gun," who was described by the caller as wearing red and black. The officers looked at police observation device (POD) camera footage from the area identified by the caller and saw an individual wearing red and black and holding what appeared to be a firearm. When the officers arrived, they identified the individual as Mr. Ashford, conducted a safety pat-down, and recovered a handgun—"a Smith

& Wesson 40-caliber firearm loaded with a round in the chamber"—from his waistband. The victim informed the officers that Mr. Ashford had pointed a gun at him on a CTA bus. Further, according to the State, Mr. Ashford possessed neither a Firearm Owners Identification card nor a concealed carry license, and had been previously convicted of two felonies: unlawful possession of a weapon by a felon (UUWF) and the manufacture and delivery of narcotics.

¶ 7    The State asked that Mr. Ashford be detained because he was "a danger to the community," based on the charges against him and the fact that he "point[ed] a firearm at a victim on a CTA bus which would be loaded with people," putting both the victim and others at risk. The State argued that, based on the facts of the case, electronic monitoring would not be an appropriate method to keep Mr. Ashford from endangering the community. It noted that Mr. Ashford had five previous felony convictions: he was convicted in 2008 of UUWF, for which he received three years in prison; in 2006 of possession of a controlled substance, for which he received 30 months of probation; in 1998 for manufacture and delivery of cannabis, for which he received one year in prison; in 1996 for the manufacture and delivery of cannabis, for which he received three years in prison; and in 1995 for possession of a controlled substance, for which he received 13 months of probation. He had also been arrested in 2004 in Wisconsin for possession of a controlled substance.

¶ 8    In response, defense counsel first pointed out that Mr. Ashford's prior felony convictions were 16 or more years old, his last failure to appear in court was almost 30 years ago, and he had successfully completed probation, parole, and the drug deferred prosecution program. Counsel also noted that Mr. Ashford had received public safety assessment scores of three for both new criminal activity and failure to appear. In mitigation, defense counsel said that Mr. Ashford was 44 years old, lived with his fiancée, who was at court supporting him, and was recently employed full-time as a custodian for the University of Chicago hospital. Defense counsel asked for the least restrictive

3

conditions, based on the remoteness of Mr. Ashford's criminal background and the fact that he had proven he could meet conditions other than detention. Defense counsel stated that the court could limit Mr. Ashford's movements by using electronic monitoring or GPS, that Mr. Ashford could be ordered to stay away from the victim, and that his movement could be limited to certain routes that would allow him to get to and from work.

¶ 9    In rebuttal, the State pointed out that Mr. Ashford's last conviction was for unlawful possession of a weapon by a felon, so he knew he should not have possessed a firearm, and that he was alleged to have then pointed that firearm at someone on a bus. The State argued electronic monitoring would not prevent him from doing it again.

¶ 10    In considering whether the State had shown by clear and convincing evidence that the proof was evident and the presumption great that Mr. Ashford committed the offense charged, the court summarized the State's proffer and noted Mr. Ashford's criminal history. The court acknowledged that "we don't know everything right now," but said the State had shown by clear and convincing evidence the elements of Mr. Ashford being an armed habitual criminal because "officers personally observed on [POD] cam and then in person Mr. Ashford in possession of a weapon on his person, and he is a convicted felon."

¶ 11    As to whether the State had shown by clear and convincing evidence that Mr. Ashford presented a real and present danger, the court pointed out that being an armed habitual criminal is a non-probationable offense with a mandatory minimum sentence because the "legislature wants to deter people, felons, from being in possession of firearms as they are a danger to the safety, health, [and] welfare of the community." And, according to the court, "You cannot dispute that walking down the street *** with an open firearm in your hand or on your person creates a danger to the community." In addition, the court noted that Mr. Ashford was alleged to have shown the

weapon on public transportation, where "people are pretty much crammed on a bus next to each other and a firearm being openly displayed and brandished creates an extremely dangerous situation." The court found, based on the facts and circumstances of the case before it and Mr. Ashford's criminal history, that he "had a history of obtaining and possess[ing] firearms when he should not have them."

¶ 12    With respect to whether the State had shown by clear and convincing evidence that there was no less restrictive condition or combination of conditions that would ensure the safety of the community or a particular person, the court acknowledged the mitigation in favor of Mr. Ashford—that his fiancée was in court and that he was employed. The court also recognized defense counsel's suggestion that Mr. Ashford be released and placed on GPS and electronic monitoring. The court found, however, that GPS and electronic monitoring "[a]re not infallible"— there is the possibility that a defendant will "ignore them, tamper with them, or walk away." Based upon the facts of the current case and Mr. Ashford's previous UUWF conviction, the court said it could not find "that electronic monitoring, GPS, or home confinement [would] suffice to mitigate the current danger that Mr. Ashford presents to the community."

¶ 13    The court granted the State's petition and, in a written order consistent with its oral findings, ordered Mr. Ashford detained until trial.

¶ 14                                II. JURISDICTION

¶ 15    The circuit court entered its order granting the State's petition for pretrial detention on March 30, 2024, and Mr. Ashford filed a timely notice of appeal from that order on April 10, 2024. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 16                                    III. ANALYSIS

¶ 17     Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief, the State needs to prove by clear and convincing evidence that (1) "the proof is evident or the presumption great" that Mr. Ashford committed a qualifying offense, (2) he "poses a real and present threat to the safety of any person or persons or the community" (the dangerousness standard), and (3) "no condition or combination of conditions" set forth in section 110-10(b) (*id.* § 110-10(b)) of the Code can mitigate either that safety risk or Mr. Ashford's willful flight. *Id.* § 110-6.1(e)(1)-(3).

¶ 18     The statute makes clear that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 19     Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We have concluded that our review of such orders is twofold. We review the circuit court's factual findings under the manifest-weight-of-the-evidence standard. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (applying a similar standard of review for the requirement of clear and convincing evidence by the State in termination-of-parental rights proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17.

¶ 20    As to the court's decision regarding whether there are any conditions of release that can mitigate such risks, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 21    Here, Mr. Ashford has elected to stand on his notice of appeal rather than file a memorandum in support of his arguments, as was permitted by Rule 604 at the time he filed his notice of appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). In his notice of appeal, Mr. Ashford does not challenge the circuit court's finding that the proof is evident or the presumption great that he committed the qualifying offense or its finding that his pretrial release would pose a real and present threat to the safety of the community. The only basis stated in his notice of appeal is that the court erred in determining that no condition or combination of conditions would reasonably ensure his appearance at later hearings or prevent him from being charged with a subsequent offense. Mr. Ashford's arguments are misplaced, however, because not only is that not one of the bases for denying pretrial release, it is also not a basis on which the circuit court ruled in this case.

¶ 22    The basis Mr. Ashford relies on comes from section 110-6(a) of the Code, which governs *revocations* of pretrial release. That section provides that a defendant's *previously granted* pretrial release can be revoked if he is charged with a new case and the State proves that "no condition or

combination of conditions would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a) (West 2022). As the State points out, because Mr. Ashford was not on pretrial release at the time of his March 30, 2024, arrest, this section of the Code simply does not apply to his case. See *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 34 n.1 (declining to consider the same argument where the defendant had not been granted pretrial release previously).

¶ 23    The confusion in this case and in *Castillo* may come from the fact that the form notice of appeal available at the time those appeals were filed included, as a ground for relief, a checkbox with language that exactly mirrored that in section 110-6(a). However, that form notice was designated for use on appeal of both the denial and revocation of pretrial release. We hope that this confusion has been alleviated since Supreme Court Rule 604(h), regarding appeals of pretrial detention orders, has now been amended and the procedures have changed. Compare Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) (providing that "[r]eview shall be by Notice of Appeal filed in the circuit court within 14 days of the entry or denial of the order from which review is sought") with Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024) (providing that, "[a]s a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief.").

¶ 24    We could read Mr. Ashford's notice of appeal as challenging any finding that he was a flight risk. As we noted above, the circuit court could have granted the State's request for pretrial detention if the State proved by clear and convincing evidence that "no condition or combination of conditions" set forth in section 110-10(b) of the Code could mitigate "the defendant's willful flight." 725 ILCS 5/110-6.1(e)(3)(ii) (West 2022). But neither the State's petition nor the circuit

court's findings were based on any such allegation. Thus, Mr. Ashford's notice of appeal gives us no basis on which to reverse the court's detention order.

¶ 25     Mr. Ashford does not appeal based on the circuit court's finding that no condition or combination of conditions can reasonably ensure the safety of any person or persons or the community if he is released pending trial. Thus, we do not need to review that finding. However, we note that we find no abuse of discretion in that finding. The circuit court specifically cited the fact that Mr. Ashford had five previous felony convictions, including one involving weapons. The court may consider several factors, including, as relevant to this case, the defendant's criminal history. *Id.* § 110-5(a)(3)(A).

¶ 26     In sum, Mr. Ashford was arrested after he was alleged to have brandished a loaded firearm at someone on a CTA bus. Not only did Mr. Ashford put the victim at risk, but also the other individuals on the bus. Based on the circumstances of the offense with which Mr. Ashford is charged and his criminal history we cannot find that no reasonable person would agree with the circuit court's finding that no condition or combination of conditions can reasonably ensure the safety of any person or the community.

¶ 27                                VI. CONCLUSION

¶ 28     For the above reasons, we affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 29     Affirmed.